*L. Anderson, for appellee.*

---

GEORGE HIGHBOGH *v.* JOHN R. HIGHBOGH.

**Right of Action Against Co-Executor.**

One executor cannot institute an action at law against his co-executor for the recovery of property belonging to the estate, for one executor has as much right to the possession as the other. When it becomes necessary to sue a co-executor the proceeding can only be brought in equity.

APPEAL FROM HART CIRCUIT COURT.

December 5, 1879.

OPINION BY JUDGE PRYOR:

It must be conceded that one executor cannot institute an action at law against his co-executor for the recovery of property belonging to the testator. One, having as much right to the possession as the other, will necessarily defeat any such recovery. The case before us is not at law but in equity, and on the part of one executor against another, who refuses to execute the trust and is claiming to hold the property of the testator in his own right. Choses-in-action and moneys that under the will are to be applied to the payment of specific devises made by the testator, and without which the trust imposed on the fiduciaries cannot be·executed, are being withheld. It is as much the duty of one executor to execute the provisions of the will as the other, and of all the executors to see that the wishes of the devisor are carried out. In this case it becomes necessary to have a construction of the will or the direction of the chancellor as to the payment of certain legacies. The widow had renounced the provisions of the will; some of the property devised had been sold by the testator prior to his death; the claim by the widow of her distributable share of her estate rendered it doubtful as to the sufficiency of the personal estate to pay the special legacies, and under such circumstances it was eminently proper that a faithful executor should go into a court of equity for advice from the chancellor and also to know of his co-executor why he was claiming in his own right a large amount of moneys or choses-in-action belonging to the estate. This was his only remedy, and we see no objection to the jurisdiction of the chancellor to the character of the proceeding adopted by the appellee for the settlement of the estate. The devisees were all made defendants to the action, and the litigation between the two executors must necessarily be final as to all the parties interested.

It is alleged in the petition that the county bonds and moneys belonging to the testator were in the possession of the appellant, and that he was claiming them in his own right. This claim necessarily obstructed, until settled, the execution of the provisions of the will, and there can be no question but that the statements of the petition if true entitled the appellee to the relief asked. All the authorities when determining that the right of possession, as well as the title, is vested in all the executors alike, indicate that when it becomes necessary to sue a co-executor the proceeding must be in equity. Grounds, of course, must exist for equitable relief, and they certainly exist in this case.

The answer of the appellant, although made a cross-petition, is in effect a denial only of the allegations in the original petition. Under the present system of pleadings a reply might be necessary, but under the old code the answer in this case made the issue. The appellee alleges that the notes and bonds belonged to the estate. The appellant denies this fact and alleges a gift to him by the testator of the property claimed. If the answer is to be regarded as a cross-petition or counterclaim, it is evident from the record that a demurrer was interposed to the answer as a cross-petition and counterclaim, from the fact that we find no order from which the appellant excepts to the action of the court in sustaining a demurrer to the cross-petition and counterclaim. It is true the demurrer is not found in the record, the proceedings below being so defectively transcribed by the clerk as to render the record almost unintelligible, yet no exceptions would have been taken, as we must presume, unless a demurrer had been entered. It is also evident that the reply filed by the widow traversing the statements of the answer and marked "filed" was regarded by the parties as a part of the record, and treated as if filed in open court. This, however, we regard as immaterial, and will consider the questions presented upon the idea that the petition and answer made such an issue under the old code as authorized the judgment.

The testator, it appears, was possessed of a large estate, and left his wife surviving him. Having no children, the devises were made to his own kindred, and his brother George, the appellant, made his residuary devisee. It is manifest from the whole testimony in this case that the testator for many years prior to his death, and after the accumulation of a considerable estate, fearing that he might be robbed of his bonds and notes, was in the habit, particularly when leaving home, of placing them in the custody of some of his kindred for safe keeping. He and his wife were living alone on his premises and it was not unnatural that he should use this precaution in preserving the accumulations of a life of much toil and labor. The county bonds, amounting to near $15,000, his brother George had the custody of for several years prior to his death, the testator going to his brother George's and obtaining the coupons when due, and occasionally bringing the bonds home with him and again returning them. A few months prior to his death he sent his wife to his brother after the bonds, they were delivered to her, and by her delivered to the old man, and were found in his possession at his death.

27

No claim was asserted by the appellant to these bonds for some time after the death of his brother, and not until after he ascertained that the widow intended to renounce the provisions of the will, and then he claimed, seeing, no doubt, that it would lessen his residuary interest, that the testator had long prior thereto given to him these bonds, retaining the right to the interest on the coupons as long as he lived.

 The gift is proven by the declarations made by the testator to members of appellant's family and to one Watkins, and expressly established by the statement of one of appellant's sons. The appellant says the bonds were given him previous to the year 1872, and when in his possession the testator applied for them to exchange for other bonds that were drawing more interest. He gave him the bonds, and when they were returned by the testator, doubting his ability to prove the gift in the event of his brother's death, he made that suggestion to him, and the latter (his brother) called Jim, the son of appellant, and said he would fix the matter all right; stated that there was $10,200 of the bonds, and said to Jim, "I want you to be a witness that I give these bonds to your father over and above his part of my estate," and said to Jim, "Don't you forget."

 With all this proof at the command of the appellant no claim is made until weeks after the death of the testator, and after a statement made to parties entirely disinterested by appellant, when talking to appellant or he to them of the value of the estate, that the testator left about $15,000 in county bonds. After detailing the manner of the gift, and upon the cross-examination by appellee's counsel, when asked to describe the bonds, he says he never opened the bundle nor made any examination of the contents of the package during the whole time he had it in his possession, and when he does open it he finds that it contains $13,200 in bonds, instead of $10,200. This was after the appraisement, and while the manner of the gift, as stated by both the appellant and his son, casts a suspicion on the whole transaction, the statement by the appellant that he never examined the package, nor knew how much it contained, but adds to the conviction forced upon the mind by the entire evidence in this record that the claim on the part of the appellant had its origin after the death of the testator, and with a view of securing to himself the larger portion of the estate. The box of gold and silver that he obtained but a few days before the death of the testator but strengthens this conclusion. This box of money the testator had kept in his

wheat bin, and on the occasion of his brother's visit he told him, as the widow swears, to get the box in order that Dave Highbogh, another relation, might take the money and exchange it for greenbacks, and when leaving with the box he told him to retain it until the testator saw Dave, as he thought he could suggest to Dave a plan by which he could make a better trade for the greenbacks than if left to himself.

This is denied by the appellant, who says that he has no recollection of the conversation, but that the old man called him to his bed and pulling his head to his, told him he could have it, it was his. The statement of the widow is plain and natural, and carries with it the semblance of fairness and truth; and the proof showing that the gifts made by the testator to his kindred were open and not concealed, known by neighbors and kindred, the statement made by the appellant is incredible. The widow says that when she went after the bonds shortly before her husband's death that she called for John's bonds and they were delivered, no claim made by the appellant, nor any ever made known until it was understood she proposed to renounce the provisions of the will.

The chancellor below knew all the witnesses in this case, and was in a better condition to judge of the surroundings than this court, and in our opinion it is not necessary to look beyond the evidence as spread upon the record to satisfy any one, however ignorant he may be of testifying, that this claim of the appellant has no foundation in fact, and the judgment was therefore proper.

The exhibit filed with the record purporting to show that he had given away these county bonds is evidently not the exhibit referred to by the witness, John Highbogh. This can be seen by the examination in chief, as well as the cross-examination, and while the affidavit of counsel cannot be read to supply the record, we have had no trouble in seeing that it forms no part of the gifts alleged to have been made by the testator. While the appellee may have had no right to unite his co-executors as plaintiffs, they were made defendants, the issue tried and a judgment rendered. The same is now *affirmed.*

*Reid & Twyman, W. P. D. Bush, for appellant.*
*A. B. Montgomery, for appellee.*